Ward v. Wheeler.

W. J. WARD v. JESSE O. WHEELER.

It is not deemed necessary to notice all the objections to evidence and the rulings of the Court upon them, separately. We think, upon the whole, the correctness of the plaintiff's account was established by competent evidence, and beyond a doubt, to, at least, the amount of the recovery awarded him by the judgment of the Court.

Where a witness is called to prove books of account, it is proper to elicit from the witness all that he did in the way of keeping the books, and all that he knows as to the manner in which the books were kept, and as to the different persons by whom entries were made; and then, if the account is not fully proved, other witnesses should be called, until the plaintiff is satisfied, and

closes his testimony ; after which the defendant may move to exclude such items as are not sustained by any competent evidence  And it would seem that this rule applies to charges of cash paid to order, goods delivered to order, and goods delivered and cash paid to a third person on account of the person charged.

Where the plaintiff has introduced the testimony of witnesses to prove an account sued on, if there are any items as to which no competent testimony has been given, the defendant should move the Court to exclude said items from the jury, or to instruct the jury that as to said items there is no evidence before them ; it is not proper, in such a case, to ask the Court to instruct the jury, for example, that one clerk cannot testify as to entries made by another, unless he know them to be correct of his own personal knowledge, or to give in charge other like general principle as to the admissibility of evidence.

Appeal from Calhoun.   Tried below before the Hon. Fielding Jones.

Suit by appellee against appellant on an account.

The plaintiff's account was kept against the steamboat Kate Ward and owners ; commenced April 19, 1849, and closed December 18th, 1850 ; aggregate charges $4,004 83 ; credits $1,928 94 ; then due $2,075 89.   Besides charges in ordinary form as for goods sold and delivered to the defendant, there were charges as follows : June 15, 1849, cash to Mate, $2 ; one pair pants to Brown, $2 ; one pair pants to Armstead, $2 ; cash $65.   June 21, 1849, amt. paid your order in favor of John F. Garrett, $285 76.   Aug. 12, 1849, one pair pants to Rogers, $2 ; two shirts, $1 50, one plug of tobacco, 50 cts., one pair pants to McPherson, $2 ; cash paid your order to bearer, $23 50. Aug. 23, 1849, cash paid your order to Kartenhoul, $23 50 ; one French sock to Porter, 25 cts.; Aug. 24, 1849, cash paid your order, $6 ; cash to Wood, $20 ; cash advanced, $20.   Aug. 31, 1849, one pair pants to Wonderly, $1 50 ; one whetstone to same, 38 cts.   Sept. 5, 1849, cash advanced, $25 ; amt. paid your order, $10.   Sept. 8, 1849, one pair shoes to Brown, $1 50. Sept. 10, 1849, hat to Wonderly, $1, fine comb, 25 cts., thread, 25 cts. to Wonderly.   Sept. 18, 1849, one plug of tobacco to Wonderly, 50 cts.   Sept. 24, 1849, cash, $35.   Sept. 29, 1849, cash to Wonderly, $20.   Oct. 1, 1849, one plug tobacco to

Brown, 40 cts.   Oct. 2, 1849, amt. invoice boiler iron, $16 28 ; charges on same, $23 24 ; amt. to Steidler, $6.   Oct. 8, 1849, cash, $20.   Oct 22, two tin cups, per Harper, 20 cts.   Oct. 11, amt. to Briggs, $13 ;  Oct. 12, two gunny bags, 38 cts., per Mr. Harper.   Oct. 13th, two plugs tobacco to Porter, 50 cts. Oct. 17th, amt. to boy hauling iron, 50 cts.; amt. your order to Lyons, $5 59.   Oct. 18th, cash $10.   Oct. 19th, half pound powder, 25ts. to Lyons.   Oct. 20th, tobacco 40 cts., Brown. Oct. 23d, thread 25 cts., Wonderly.   Oct. 25th, cash to Decrow $15 75 ; amt. to Briggs, $44 50.   Oct. 30th, cash $30 ; cash to Brown, $2 ; do. to Wonderly, $2 ; do. to McPherson, $1 ; one pair pants $2, McPherson ;  one coat to Wonderly, $2. Nov. 12th, cash to Wonderly, $100.   Nov. 13th, two and a half gallons whiskey to Harper, $2 50.   Nov. 28th, amt. Johnson's bill rendered.     Dec. 3, cash 50 cts.; tobacco to Wonderly, 50 cts.   Dec. 12th, cigars 25 cts., Brown ; two shirts, McPherson, $2 ; two pairs drawers, McPherson, $1 50.   Dec. 13th, two pairs drawers, Brown, $1 50.   Dec. 15th, cash $29. 1850, Jan. 8th, one knife, McPherson, 75 cts.; cash $2 ; cigars to Brown, 37 cts.; cash to McPherson, $3 ; one pair pants to Warren, $2.   Jan. 10th, cash, $8 ; amt. to Wonderly, $2.   Jan. 14th, tobacco to McP. 25 cts.; do. to Warren, 25 cts.   Jan. 15th, cash $57 ; amt. to Porter $162 82.   Jan. 16th, cash $43 34. Jan. 29th, tobacco, Warren, 25 cts.; do. to Hartford, 50 cts. Jan. 30th, cash $15 ; tobacco, McP., 50 cts.; 2 pairs wool hose to Warren $1.   Feb. 2d, pants, McP., $4 ; hose, do, 50 cts.   Feb. 4th, amt. paid Porter $75.   March 2d, amt. paid your note to Henry Nobles $24 50.   March 7, matches to Miller 10 cts.; cash $2.   March 14th, cash $200 ; amt. paid Hardy $211 58 ;  Reves $26 24.   April 6, H. Brockman $162 39 ; Fryer $90 ; Hull $20 54 ; Carlos de la Garza $92 65.   May 1st, amt. paid Cunningham, hauling, $124 91 ; do. Jno. James, do. $63 75 ; do. John W. Dean, do. $21 17.   May 25th, amt. paid your order to Lyons $5.   July 12th, amt. paid Nicholson $44 50.   Sept. 19th, 1 pair boots to Stewart & Miller $5 ; 1

pair shoes to do. $4 50.    Sept. 14th, 1 mosquito bar to Miller
$1 50 ; tobacco to Brown 75 cts.    Sept. 28th, 1 hat to Stewart
$1 50.    Nov. 16th, thread to Stewart 25 cts.    Dec. 18th, amt.
paid order to Stewart $5.    Amt. paid drayage, government
freight, $10 ; amt. of F. A. Brown acct. assumed $44 50 ; do.
Gen. A. Somerville acct. do. $29 31.

The other charges in the account consisted of a great many
items, most of which, in amount, were necessary supplies for a
steamboat, and the balance for such articles as would be used
by laborers or employees on board a steamboat.

The credit side of plaintiff's account was as follows :  June
18, 1849, by my freight bill $28.    June 30th, by W. M. Cook's
note returned $110.    July 5th, by Thomas Decrow do. $36 79.
July 20th, amt. bal. of acct. Jno. F. Garnett's order $184 51.
Nov. 26th, freight on 1502 feet at $8 M. $12 01 ; 23 empty
barrels $5 75.    Nov. 26th, 4 bags salt $1 ; 4 do. Rose, $3 ;
3506 shingles, $1 M, $3 50 ;   654 feet lumber, $8 M. $5 13
1850, March 7th, my freight bill $32 52 ;   Pridgen $17 15 ;
Murphee $1 48 ;  Curch  $7.     May 1st, amount from agent,
Austin, $252 50 ;  9000 feet lumber, $25 M, $225 ; freight on
42 bales cotton $31 50 ;  do. on 92343 lbs. ft.,  less $11 50 for
axletrees, $219 35 ; do on 60340 lbs. $754 25.  Total $1928 94,
leaving balance due  Wheeler $2075 89.

The  defendant pleaded a general denial, and by way of set
off, the following account :

J. O. Wheeler to W. J. Ward, June 18, 1849, to freight bill
rendered, credited by J. O. W. for 196 bbls molasses from
Indianola $23 75 ; 2 bbls currants $1 50 ; 5 do oyster shells,
$2 50 ;  100 lbs. iron 25c.    June 19th, 10480 ft. lumber
$262 20.   Nov. 8th, freight on pecans 40c.; 13 sacks at 20c.
$10 60 ; do. on 1011 ft. lumber $8 10˙; do. on 471 to Gunble
$4 ; do. on 484 to Wheeler $5 20 ; do. on 23 bbls. $5 75 ; do.
on 4 bags salt $1 ; do. on 4 bbls. from Rose $3.   Nov. 23d,
do. on 3506 shingles, at $1, $3 50.   Dec. 4th, do. on 29480
laths $73 71 ; do. on 340 feet, J. M. Brown, 85 cts.   Dec. 25th,

do. on 46 bales cotton $31 50.   Dec. 12th, do. on 38 plows
$1 60 , 2 R. chairs $1 ; 13 B. do. $5 25 ; do. on 1 bag feathers
50 cts., 1 mattress 50 cts.; 2 W. stands 75 cts.; 1 table $1 ;
4 bedsteads $1 50.    Jan. 11, 1850, do. on 2104 laths $5 26 ;
order on Q. Master, San Antonio, $510 75.   Feb. 2d, freight
on 9924 lbs. $24 81 ; do. on pkg. chairs 50 cts.; do. on 2731
feet lumber $21 85 ; do. on lumber for Pridgen, $24 60.   Feb.
9th, do. on 25 bales cotton $18 75.    Feb. 7th, do. on 12209
lbs. freight $30 52 ; do. on 592 bbls. do., Murphy, $1 48.   Nov.
11th, 17150 shingles for Pridgen, $17 15.   Feb. 7th, freight
of 7000 shingles for Church, $7 00 ; February 12th, freight
on 5 bales cotton, $3 75 ; do. 29 hides $2 90 ; do. 6 bales deer
skins, $2 25 ; do. 6 bales cotton $4 50 ; Feb. 27, 2 bdls. deer
skins, 50 cts.   April 8th, draft on Com. Department, Austin,
$252 50 ; do. on E. B. Babbitt, $1353 68; freight on 4510 lbs.
$11 28.   April 15th, do. on mill stones, &c., $30 00.   April
23d, do. on 5 cases mdze. $5 ; do. on 1125 lbs. $2 81.   May
2d, do. on 7 bales cotton $1 25 ; his subscription assigned by
corporation to owners of boat, $300 ; to Dr. E. A. Pearson
do. $20.   In all, $3185 60.

The testimony in support of the plaintiff's account was as
follows : The plaintiff called Wm. T. Mitchell to prove the
account filed with the petition.   Witness stated that he was
principal clerk and book keeper in Victoria during the time of
the running up of the account mentioned in petition ; that
Wheeler's books were correctly kept ; that he drew off the
the account filed in this cause ; that the clerks employed in the
store during that time were correct men.

The plaintiff then proceeded to prove the correctness of the
charges in the said account ; the defendants objected to this
proof unless the books of original entries were produced.
Plaintiff then produced five books of original entries.   Witness
testified that they were the blotters kept in the store of Wheeler,
the books of original entries of merchandise, sold from the first
of April, 1849, until the year 1851, and read from the same,

item by item, all the charges and credits against the steamer "Kate Ward." He stated that an account was opened for the steamer, in April, 1849, by Capt. W. J. Ward, the defendant; that the most of the charges in the said account were in his own hand writing; some of them were in the hand writing of James Cunningham; some in that of Mr. Gaines, and some in that of Wm. Phillips, all of whom were clerks at different times. Cunningham is dead; Gaines is alive. Some of the charges are in the writing of Trow. Ward, who was agent of the steamer "Kate Ward," and some in the writing of the plaintiff. He also believed that most of the goods were delivered, but could not now testify that any article was delivered at the particular date charged, unless by reference to the books; he knew that they would not be charged unless delivered. The books were correctly kept and the rule was for each clerk to charge the goods sold by him. He believed the Brown, mentioned in the account, was the Mate of the boat Kate Ward; that McPherson and John Garnett were engineers; that Porter wast an engineer; that other persons, to whom articles are charge to have been delivered, were hands and wood-choppers on, or in some way, in the employ of the boat; does not know who Ball and Armstead are; did not deliver any goods to them. Capt. Ward did, sometimes, give verbal orders to let his hands have articles when they called for them; he frequently paid them a portion of their wages from the store. Brown was Mate of the boat; believes Porter, McPherson and Garnett were engineers; Wonderly was carpenter or wood-chopper; that Steidler was a wagoner, and Duranges a butcher. Before Capt. Ward left the river, in Dec. 1850, witness presented him with an account, rendered against the Kate Ward, similar to that filed with the petition. Witness thinks that he did render an account twice to defendant, during the time embraced in it; he made no objections to it. Witness sometimes made entries in the books without having sold the goods, when ordered by plaintiff; had sometimes paid cash to defendant.

himself, upon Wheeler's order, and most of the charges for cash are in the had writing of witness. Witness kept the key of the safe, and paid out most of the money ; kept cash account, and considered himself responsible for the cash ; although Wheeler never told him that he was responsible. Wheeler sometimes paid money out of the safe, and witness, if ordered would make the charge on the books. Witness does not recollect anything of any drafts, but knows that the Kate Ward brought up the amount of freight, in the two items of credit in plaintiff's account, for government ; that the plaintiff forwarded them to San Antonio ; that he paid the wagoners, he thinks, one dollar per hundred pounds ; recognises the bills of lading and knows that plaintiff paid the wagoners.

Here followed memorandums of bills of lading from Victoria to San Antonio, dated some in January, and some in March 1850, showing that John W. Patton hauled 4458 pounds ; Dewitt Grove 8859 lbs.; Wm. Gwinn 5822 lbs.; Claud Wilmel 3090 lbs.; Jacob Krumm 5295 lbs.; M. H. Hardy 28354 lbs.; H. M. Tippett 12115 lbs.; H. H. Brockman 16239 lbs.; Carlos de la Garza 9465 lbs.; Patrick Gain 8295 lbs.; C. Reas 2624 lbs.; Hall 4016 lbs.; C. Harper 3714 lbs.; D. B. Fryer 6286 lbs., and 5246 lbs. by person unnamed.

Mitchell, cross-examined, stated item by item of the original entries, naming by whom charged. He stated that he was absent from about the 7th of May, 1849, to September same year, on a visit to Tennessee.

The defendant's counsel then asked the Court to rule out all the evidence as to the items, not charged in witness' hand writing, also all items paid or delivered to other persons ; all cash items ; which motion was overruled, and the defendant excepted to the ruling of the Court.

Plaintiff called T. A. Brown, who testified that he was Mate on the steamer Kate Ward, whilst she was running in the Guadalupe river, in 1849 and 1850 ; that he purchased such articles as were charged to him ; does not recollect all the ar-

ticles; had authority from the Captain to purchase such things as he needed: the hands of the steamer were paid in such things as were needed for them, in the stores in Victoria: the largest account was at Wheeler's; does not think that any other officer or hand on board was allowed to purchase goods without an order from Captain. The articles purchased by him, for himself on account of the steamer, were settled for by him in his account with the steamer. Witness got such articles as were charged in the writing of Mr. Wheeler, in the Summer of 1849; does not recollect the particular amount or time of purchase.

Defendant called Winnimore, who stated that he was in the employ of the Quartermaster Department during the whole of the years 1849 and 1850; that he paid Wheeler for hauling about 150,000 pounds of freight to San Antonio; that he paid the amounts on drafts drawn by W. J. Ward in favor of J. O. Wheeler; the amounts were paid on freight from Indianola to San Antonio. The usual price of freight was, at that time, from $1 25 to $1 50 per hundred; the amount he paid then was $1 25 per hundred. There was a deduction in one case because the weight fell short; in the other for breakage.

Here followed bills of lading, signed by defendant for the amount of freight mentioned by witness, with copies of drafts, drawn by defendant, in favor of plaintiff on the United States Quartermaster at San Antonio for the freight; one dated January 16th, 1850, for $510 75, and another dated April 8, 1850, for  1353 68. Attached to first bill of lading and copy of first draft was plaintiff's receipt for $472 50, dated March 2d, 1850; and, attached to the other, plaintiff's receipt for $1347 93, dated June 7, 1850.

The defendant offered his books, with his suppletory oath to prove the correctness of his books. The plaintiff objected; the objection sustained and defendant excepted.

F. A. Brown, sworn, says he was mate on the Kate Ward whilst running in the Guadalupe river. It was his principal

business to receive and deliver freight.   He recollects that many articles in defendant's account are such as were delivered to plaintiff at Victoria, and carried from there for him ; cannot recollect the precise amount.

The books introduced by defendant are the books of the Kate Ward, kept in the regular course of business by the captain ; believes they were correctly kept.   Stated each item by item of the account taken from the books of original entries.

Defendant here proved the last two items of his account of $300 and $20.

Mr. Brown also states that it was understood on board the boat that none of the hands, but himself, could get anything on the credit of the boat without an order from the captain. Did not know whether the clerks at Wheeler's knew this. Did not know the amount of lumber ; knows that the steamer, several times, delivered lumber to Wheeler ; some pecans were shipped ; Wheeler shipped cotton several times.   He does not recollect whether the twenty-five bales were shipped for Wheeler or Campbell.   The charge for mill stones was for taking them from the river at Wheeler's request ; does not know whether they were worth $30 or not.

Here defendant showed bills of lading ; witness recognized them (same as before referred to.)   The defendant proved by William Runge, that he shipped lumber by the Kate Ward ; does not know to whom.   He recognized one shipment that he shipped to Wheeler.

Samuel Ward testified that he did not know that any one on the Kate Ward was authorized to buy goods on the credit of the boat, without an order.

The statement of facts showed that the defendant read a deposition of Trobridge Ward, which was mislaid and contents not stated ; also that plaintiff, in rebuttal, read another deposition of the same witness previously taken, which was also mislaid, and contents not stated.   The conclusion of the

statement of facts was as follows : Plaintiff here showed by
the books of defendant, that he had charged Wonderly by
amount of Wheeler's account ———— dollars ; Porter by
amount of Wheeler's account ———— dollars ; among other
items seventy-five cents cash ; Miller & Stewart also were
charged by amount of Wheeler's account ———— dollars., The
defendant having taken his books away the exact amount can-
not be shown by these items.

The Court instructed the jury that if they believed from the
evidence, that the defendant was indebted to the plaintiff,
they should so find, and the amount.

The instructions asked by defendant and refused were as
follows :

1st. That the entries in the book of a merchant must be
proved by the clerk making them, if the merchant has a clerk.

2d. One clerk cannot testify to entries made by another,
unless he saw them made and knew them to be correct.

3rd. Cash items in an account of a merchant, who sells
goods, wares and merchandise, cannot be proved by his books
alone, though the books are admitted as evidence to go before
the jury.

4th. When orders or invoices are referred to in entries in
merchants' books of accounts, as the foundation of the entries,
those oders or invoices must be produced.

5th. That in order to prove merchants' accounts from their
books, it is necessary that the clerk, who made the entries,
should be produced as a witness, and that in case of his death,
his handwriting may be proved.

6th. That if the clerk who made the entries is living, it is
not sufficient to establish the entries by proving the hand-
writing of the clerk, without proving the delivery.

The jury found for the plaintiff $1855 57, for which judg-
ment was rendered March 22, 1854.   Afterwards the plaintiff
remitted $300.

The answer of defendant, instructions asked by both parties,

the motion for a new trial, and the assignment of errors, all referred to a defence that the plaintiff was a partner of defendant in running the boat, during the period covered by the account ; but there was nothing of that sort in the statement of facts. The evidence, if any upon the subject, may have been in the depositions of Trobridge Ward, which the statement of facts says were mislaid.

The statement of facts was signed by the counsel for appellee, and certified by the Judge.

There was a bill of exceptions as follows : Be it remembered that, at the said Term of Court, came on to be heard the cause of J. O. Wheeler v. William J. Ward, when the plaintiff introduced, as a witness, William T. Mitchell, who testified that the books, then presented as the account books of the plaintiff, were the plaintiff's books of account, kept by him as a merchant, and also, that he (the said witness) had been during the years 1849, 1850 and 1851, a book-keeper in the establishment of the plaintiff, and that there had been business transactions during that time between the plaintiff and defendant, and that an account had been opened in said books with the steamer Kate Ward by agreement with the defendant ; that during the time aforesaid witness had been absent from the State about three months ; that the entries in said books were, a portion of them, in the writing of the witness, and a portion in the writing of J. O. Wheeler, the plaintiff, and a portion in the writing of other clerks of said plaintiff, and that one of said clerks was dead ; the others were living, and that witness believed that the plaintiff's books were correctly kept. The defendant then, by counsel, objected to the testimony of the witness offered to prove the sale and delivery of articles not entered by himself, the sale and delivery of which he did not know of his personal knowledge, but believed from the entries in the books to be correct. The Court objected to this mode of proceeding in the trial, as it would be inconvenient and retard the progress of the trial, to object to the items of said

account in detail, and ordered that the witness proceed and testify as to all the entries, and that, after the full examination of the witness, the defendant might move to exclude any portion or portions of his testimony from the jury, to which order the defendant, by his counsel, excepted.

After the examination of the witness the defendant, by his counsel, moved the Court to exclude from the jury the evidence of all the items of the account, not entered by himself, and in the handwriting of others, and of the sale and delivery of which he had no distinct recollection.

The witness, Mitchell, also having stated in his evidence that he had no recollection of the actual delivery of any particular article, charged by him against defendant, in said books, but had a full and distinct recollection of the purchase of goods out of the store from the fact of the entry being in his hand-writing ; he believed they were delivered, and, also having stated, that he frequently made entries by the direction of plaintiff, without having personal knowledge of the transaction.

Defendant, by counsel, moved the Court to exclude from the jury said items, charged in his own hand-writing.

And the said witness, Mitchell, having read charges of items from the books, purporting to have been made upon orders of defendant, which said orders were not produced upon the trial, but which, witness stated and he supposed, were in the counting room of plaintiff ; the defendant, by his counsel, moved the Court to exclude from the jury the said evidence of said items, unless the said orders were produced.

And the said Mitchell having also read from said books items of charges, made as per invoices, and having stated that said items were in different hand-writings, some of them in his own, and that he could not testify as to their correctness from his personal recollection, but believed those made by him were correct, from the fact of his having entered them, and said invoices not having been produced upon the trial, and the said witness stating that he supposed said invoices were on

Ward v. Wheeler.

file in the store of plaintiffs; the defendant, by his counsel, moved the Court to exclude from the jury said evidences of said items, unless said invoices were produced.

And the said Mitchell having read from said books several items of charges for cash and stated that he could not testify as to those charges from his recollection of the individual items, but believed they were correct; that he, witness, carried the key of the iron safe, and also kept the cash account, and that these entries were made, some by him, some by plaintiff and some by other clerks; the defendant by his counsel moved the Court to exclude from the jury all said evidence, unless additional proof should be given as to them, on the ground that they were not items in the regular course of mercantile business, and that such charges could only be proved by actual evidence of the individual items, or by productions of receipts or orders therefor.

Which said motions to exclude said testimony were all overruled by the Court, and the said testimony permitted to go to the jury.

To which overrulings of said motions, as well as to the permitting of said testimony to go to the jury, defendant, by counsel, objected.

*Phillips & Phillips*, for appellant. I. The Court erred in overruling the defendant's motion to exclude testimony, as set forth in defendant's bill of exceptions No. 1, and in permitting that evidence to go to the jury as good and sufficient proof.

The best evidence to prove the items charged as on the orders of the defendant, was the respective orders themselves. Those charged as per invoice, should have been proved by the production of the invoices.

So too with regard to the entries not made by himself, the best evidence was the testimony of those clerks by whom they were made. The absence of those clerks was not accounted for, with the exception of the one who was dead.

The admissibility of the entries in a merchant's books, is a departure from the common law rules of evidence, and is only tolerated from a supposed "moral necessity," arising from the nature of the case. This moral necessity is founded upon the supposed impossibility or extreme difficulty of making the common law proofs of an account. When the reason of this departure from the common law fails, then the rule fails also. This is clearly laid down in all the text books, and is elabor-ately discussed in Cowen & Hill's Notes to Phillips on Evi., 3d ed. part 1st, p. 297, *et infra.*

The American decisions under the respective Statutes of the different States, are there fully discussed, and shown to be dependent upon the presumption that unless such evidence could be received, there would be a total failure of proof.

But this Court has likewise investigated this subject, and declared in Cole v. Dial, 8 Tex. R. 347, that the rule (admit-ting books in evidence) was admitted with some reluctance in the case of Parrot v. Underwood, 2 Tex. R. 163, but that its further extension would not be tolerated.

Yet the intrinsic circumstances laid down in the latter case as essential to accredit the books, would exclude the testimony of the witness Mitchell :

First, with regard to the items entered by other clerks ;

Second, those of which he did not know the delivery ;

Third, those made by the plaintiff himself ;

Fourth, those based upon orders and invoices ; and

Fifth, those made while the witness was absent from the State.

It will be seen from the bill of exceptions, that the witness Mitchell was permitted to read off all the items of the account, *seriatim,* without regard to whether they were charged by himself or others.

The Court refused to exclude this improper testimony, 1st, when it was objected to item by item, on the ground of incon-venience ; and 2nd, when they were objected to in the aggre-

gate, after the testimony had disclosed their inadmissibility ; but the grounds of this last refusal was not stated.

The jury were impressed with the belief that the items were all fully proved, because they were read off by a witness under oath.

With respect to the correctness of the charges made by Wheeler, and his other clerks, Mitchell could not testify, but only that he recognized their hand-writings. He even states that many of the entries made by himself, were made at the dictation of Wheeler, when he, Mitchell, knew nothing of the transaction. Yet no distinction was drawn between the various items, but all were permitted to go to the jury promiscuously, *en masse*, and from the sanction of the Court, they were led to believe them all fully established.

" If it appear either on the face of the charge, or in any " other way, that there is in fact living or attainable proof of " the item, independent of the items, the latter are then inad-" missible, for it being apparent that the ordinary common law " proof exists, which is superior in degree, that must be pro-" duced." (Cowen & Hill's Notes, 3rd ed. part 1st, p. 309.)

" The common case in New York, is where the party has a clerk." (Cowen & Hill, 3rd ed. part 1st, p. 309 ; Vosberg v. Thayer, 12 Johns. R. 452. See also dissenting Opinion of Platt Justice, in that case, and authorities there cited.)

"Nothing can excuse the absence of the clerk but his death." (Cowen & Hill, p. 309 ; Kennedy v. Fairman, 1 Harvy, 458 ; Whitfield v. Walk, 2 Harvy, 24.)

Charges for work done by a servant were disallowed as evidence, the Court saying such evidence was allowed from necessity, and where the work is done by a third person, the necessity does not exist. He can prove it ; *cessante ratione, cessat ipsa lex.* (Cowen & Hill, 310 ; Wright v. Sharp, 1 Brown, 344.)

" If the goods were delivered to a third person on account " of the vendee, the books are not evidence, (Id. Kerr v. Lane,

" 1 Wash. R. 172,) not even though they were the vendee's "servants." (Eastman v. Moulton, N. H. R. 156.) "The charge "on its face purporting to be of goods delivered to another "on the defendant's order, it was rejected as incompetent." (Cowen v. Hill, 310 ; Pembroke v. Johnson, 1 Coxe's R. 288 ; Townsly v. Wooley, 1 Coxe's R. 377.) The order must be produced.   (Smith v. Lane, 12 Serg. & Rawle, 80.)

Where the goods are delivered out by another, or by others, the account kept by them or by one on their information, cannot be received, for the party has other proof by those who delivered the goods, and they must be produced or their absence be accounted for.   (Cowen v. Hill, 310 ; Smith v. Lane, 12 Serg. & Rawle, 80.)

The entry must be made by the very party who takes the oath.   (Cowen v. Hill, 308 ; Eastman v. Moulton, 3 N. H. R. 156.)

Cash advanced and money loaned are not within the regular course of mercantile business, and could not be proved by the entries in the books.   This has been expressly so decided in the case of Cole v. Dial, 8 Tex. R. 347.

II.   The Court erred in refusing to give the instructions asked by the defendant.   The propriety of all the charges asked on the part of the defendant, will readily appear from the authorities cited above.   What has already been said under the first assignment of errors, is equally applicable here.

During the progress of the trial we took down the notes of the evidence, and made a list of the different classes of the items in the plaintiff's account, noting those in each hand-writing, with what the witness said in regard to them respectively.   From these data we prepared a statement of facts, which we submitted to the opposite counsel and the Court, but they refused to sign it.   Hence any apparent contradiction between the plaintiff's statement of facts, signed by the Court after the trial, and defendant's bill of exceptions No. 1, signed

Ward v. Wheeler.

by the Court during the progress of the trial. We could not give our assent to the statement of facts submitted by the counsel for the plaintiff, because it differed very materially in every important particular, from the evidence given on the trial, and noted down by us as delivered. We are therefore reduced to the necessity of relying almost exclusively on our bill of exceptions, and we claim the protection of this Court in behalf of our client.

*Cunningham & Holt,* for appellee. The rule, as we understand, established by the authorities in proving merchants' accounts is this : That upon the production and proof of the original books of entries, and proof that the books were correctly kept, and that a considerable portion of the charges are correct, the books, together with the facts proved, are evidence from which the jury may find that the amount as charged is correct.

The appellee offered in evidence five books of accounts, in which the account sued on was charged in regular course of business; proved them to be original books of entry, and proved that the books were correctly kept. Witness, who was the principal book-keeper, proved that a large number of the charges were in his hand-writing ; that the residue of the charges was in the hand-writing of the other clerks in the house and the plaintiff ; that one of the clerks was dead ; that nearly all the charges for cash were in the hand-writing of the witness. It was proved by other witnesses who were at the time in the employ of the defendant, that they purchased of the plaintiff by authority on account of the defendant, a large number of the articles charged in the account, and that the account to that extent was correct, and that a number of the articles purchased by one of them were charged in the hand-writing of plaintiff.

This proof we conceive fully authorized the Court to suffer the books to go before the jury for their consideration, and it

is for the jury to determine from the facts before them, what portion of the accounts is established, and the Court will not disturb a verdict found upon such testimony.


WHEELER, J.   The only question presented by the record, which is deemed to require notice, is as to the admissibility of evidence, and its sufficiency to support the verdict.   It cannot be doubted that it was competent to permit the witness, Mitchell, to testify as to the correctness of the plaintiff's account, to the extent of his information and knowledge of the subject. And it is not perceived that there was any impropriety in the course adopted by the Court to elicit the information and knowledge he possessed.   Having been the principal clerk and book-keeper, he was certainly competent to testify respecting the correctness of the books under his especial care and keeping.   That other clerks in the store may have made an occasional entry of goods sold by them, did not necessarily render them the only competent witnesses of the correctness of the entries.   The book-keeper under whose especial supervision they were made may be supposed equally cognizant of their correctness, and competent to depose to the fact. The motion to exclude items and portions of the evidence, as disclosed by the bill of exceptions, appears to have been premature.   The proper time to have made the motion would have been when the plaintiff had closed his evidence, rather than when he had concluded the examination of the particular witness.   Portions of the account not sufficiently established by that witness, might be by others ; as the event showed. Objections to evidence apparently well taken at the time, and certainly so, if the evidence had been closed on the part of the plaintiff, were afterwards obviated by other evidence.   Other witnesses corroborated the testimony of the book-keeper respecting parts of the account, which, upon his testimony alone, might not have been deemed sufficiently established.

Ward  v.  Wheeler.

It is not deemed necessary to notice all the objections to evidence, and the rulings of the Court upon them, separately. We think, upon the whole, the correctness of the plaintiff's account was established by competent evidence, and beyond a doubt, to at least the recovery awarded by the judgment of the Court; and that the proofs were made in accordance with the principles maintained by the Opinion and judgment of this Court in the cases of Underwood v. Parrott, (2 Tex. R. 168.) and Cole v. Dial, (8 Id. 347.)

The Court did not err in refusing to give in charge to the jury abstract propositions upon the law of evidence. The Court had ruled upon the questions of evidence propounded, at the time, and in the terms propounded ; and more, upon that subject, could not be required. To have given the instructions asked in the form proposed, would have had a tendency rather to mislead than to enlighten the jury.

We are of opinion there is no error in the judgment, and it is affirmed.

Judgment affirmed.